Henry Clay Greenberg, J.
Plaintiffs, owner and operator of the famous Maxim’s restaurant in Paris, move for summary judgment in this action for a permanent injunction restraining defendants, owner and operator of a newly opened restaurant in the Gramercy Park section of this city, from using the name Maxim’s. A motion for summary judgment may now be made in any action (Buies Civ. Prac., new rule 113, adopted eff. March 1,1959) and should be granted where there are no triable issues of fact and the claim is sufficiently established to warrant the court as a matter of law in directing judgment.
The French restaurant, “ Maxim’s ”, was established in 1893 by an individual whose given name was Máxime. It was subsequently sold and all rights therein acquired by plaintiffs. It received wide publicity as the setting of a substantial portion of Lehar’s operetta, “ The Merry Widow ”, has been the subject over a long period of years of numerous newspaper and magazine articles, and has been mentioned by name and filmed in movies and television. There is no doubt as to its unique and eminent position as a restaurant of international fame and prestige. It is, of course, well known in this country, particularly to the class of people residing in the cosmopolitan city of New York who dine out. Plaintiffs have registered the mark Maxim’s with the United States Patent Office for catering services and wines, and have merchandised and sold food products under that name, or a variant thereof, in the United States.
The affidavits and exhibits establish not merely that defendants copied the name Maxim’s but endeavored to create the illusion of identity with plaintiffs’ restaurant. They took the name of Montmartre, a Parisian subdivision, as their corporate name. The decor of their restaurant is so similar in its red and gold color scheme to the French restaurant as to be described in a newspaper article as its “ replica ”. The most significant evidence, however, is the imitation of plaintiffs’ distinctive style of script printing of the name Maxim’s. Defendants’ form of denial is pregnant with admission of the charge. They deny the distinctive script printing in their use of the name Maxim’s on the doormat, the matchbooks and the menus, but do not deny such type of printing on the awning, over the door, on credit application cards and in their advertising. The exhibits annexed prove the truth of the charge.
Defendants contend that the name “ Maxim ” became popular after the invention by two gentlemen bearing that name of smokeless powder and the machine gun and that it has been used in many different types of business. But plaintiffs and their predecessors in title made this name famous in the high-class *759 restaurant field. Whatever the source of the name, it is the origination and development of its use in a particular field which may entitle the user thereof to protection by virtue of the secondary meaning acquired therein.
It is obvious that defendants’ purpose is to appropriate the good will plaintiffs have created in the name Maxim’s as a restaurant establishment. The fact that they are not in present actual competition is immaterial (Maison Prunier v. Prunier’s Restaurant & Cafe, 159 Misc. 551). A wrongful attempt to suggest an association or connection of some sort is sufficient to warrant relief to prevent confusion in the public mind as well as dilution of plaintiffs’ trade name (Burrough, Ltd. v. Ferrara, 8 Misc 2d 819); and the more distinctive and unique the name, the greater the need for protection from dilution of its distinctive quality (Tiffany & Co. v. Tiffany Prods., 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482).
The trend of the law, both statutory and decisional, has been to extend the scope of the doctrine of unfair competition, whose basic principle is that commercial unfairness should be restrained whenever it appears that there has been a misappropriation, for the advantage of one person, of a property right belonging to another. (See Dior v. Milton, 9 Misc 2d 425, affd. 2 A D 2d 878; Federal Trade-Mark Act of 1946 [U. S. Code, tit. 15, § 1051 et seq.], and General Business Law, § 368-c, enacted in 1954 [L. 1954, ch. 628].) These plaintiffs are clearly entitled to relief in view of defendants’ appropriation of their trade name and calculated imitation of features associated with plaintiffs’ restaurant.
No evidence sufficient to create a triable issue of estoppel has been set forth by defendants. Mere failure to proceed against users of the name in other fields or areas is not such acquiescence as precludes the granting of injunctive relief against the present defendants in a field or area where plaintiffs’ interests are involved (Menendez v. Holt, 128 U. S. 514; National Lead Co. v. Wolfe, 223 F. 2d 195; Standard Oil Co. v. Standard Oil Co., 252 F. 2d 65).
Nor is there any evidence of abandonment. The Parisian restaurant, closed during the war, was reopened in 1946 by plaintiffs and fully developed thereafter with expansion of certain activities into other fields and countries. “ To constitute an abandonment there must not only be nonuser but an intent to abandon.” (Rochowits Corset & Brassiere Corp. v. Madame X Co., 248 N. Y. 272, 276.) The facts here shown establish the very reverse of an intent to abandon.
*760 Plaintiffs are accordingly entitled to an injunction restraining defendants from use of the name “ Maxim’s ”, and to an assessment to ascertain the amount of damages, if any, occasioned by defendants’ wrongful acts of unfair competition, as demanded in the complaint.
Settle order.