[880 NE2d 852, 850 NYS2d 366]

ITC Limited et al., Appellants, v Punchgini, Inc., et al., Respondents.

Argued November 13, 2007; decided December 13, 2007

## POINTS OF COUNSEL

*King & Spalding LLP,* New York City (*Ethan Horwitz, Jill Wasserman, Dana S. Gross* and *Charles A. Pannell, III,* of counsel), for appellant. I. New York's unfair competition law prohibits the misappropriation of a mark, even of a foreign mark. (*Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663; *International News Service v Associated Press,* 248 US 215; *Electrolux Corp. v Val-Worth, Inc.,* 6 NY2d 556; *Taendsticksfabriks Akticbolagat Vulcan v Myers,* 139 NY 364; *Avon Periodicals v Ziff-Davis Publ. Co.,* 27 Misc 2d 160; *Artype, Inc. v Zappulla,* 228 F2d 695; *Allied Maintenance Corp. v Allied Mech. Trades,* 42 NY2d 538; *Norwich Pharmacal Co. v Sterling Drug, Inc.,* 271 F2d 569; *Lincoln Rest. Corp. v Wolfies Rest. Inc.,* 291 F2d 302; *Flexitized, Inc. v National Flexitized Corp.,* 335 F2d 774.) II. The well-known marks doctrine is a type of unfair competition. (*Grupo Gigante SA De CV v Dallo & Co., Inc.,* 391 F3d 1088; *Vaudable v Montmartre, Inc.,* 20 Misc 2d 757; *Maison Prunier v Prunier's Rest. & Cafe, Inc.,* 159 Misc 551; *Rosman v Trans World Airlines,* 34 NY2d 385; *United States v Belmont,* 301 US 324.) III. Public policy favors recognizing the well-known marks doctrine. (*Grupo Gigante SA De CV v Dallo &*

*Co., Inc.*, 391 F3d 1088; *Ambassador E., Inc. v Shelton Corners, Inc.*, 120 F Supp 551; *International Bancorp, LLC v Societe des Bains de Mer et du Cercle des Etrangers a Monaco*, 329 F3d 359.) IV. The mark need only have sufficient secondary meaning to attract a misappropriation. (*Allied Maintenance Corp. v Allied Mech. Trades*, 42 NY2d 538; *Flexitized, Inc. v National Flexitized Corp.*, 335 F2d 774; *Santa's Workshop, Inc. v Sterling*, 282 App Div 328; *Centaur Communications, Ltd. v A/S/M Communications, Inc.*, 830 F2d 1217; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *Harlequin Enters. Ltd. v Gulf & W. Corp.*, 644 F2d 946; *Fund of Funds, Ltd. v First Am. Fund of Funds, Inc.*, 274 F Supp 517.) V. The Second Circuit's proposed standards should be rejected. (*Tone Bros., Inc. v Sysco Corp.*, 28 F3d 1192; *Shredded Wheat Co. v Humphrey Cornell Co.*, 250 F 960; *Fleischmann Distilling Corp. v Maier Brewing Co.*, 314 F2d 149; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088.)

*Kenyon & Kenyon LLP*, New York City (*Michelle Mancino Marsh, Michael J. Freno* and *Matthew Moersfelder* of counsel), for respondents. I. New York should not recognize a famous foreign marks exception. (*Hanover Star Milling Co. v Metcalf*, 240 US 403; *United Drug Co. v Theodore Rectanus Co.*, 248 US 90; *Buti v Impressa Perosa, S.R.L.*, 139 F3d 98; *Kos Pharms., Inc. v Andrx Corp.*, 369 F3d 700; *Fuji Photo Film Co., Inc. v Shinohara Shoji Kabushiki Kaisha*, 754 F2d 591; *American Circuit Breaker Corp. v Oregon Breakers, Inc.*, 406 F3d 577; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088; *Person's Co., Ltd. v Christman*, 900 F2d 1565; *Almacenes Exito S.A. v El Gallo Meat Mkt., Inc.*, 381 F Supp 2d 324; *Spartan Food Sys., Inc. v HFS Corp.*, 813 F2d 1279.) II. Any famous foreign marks doctrine must require more than secondary meaning. (*Japan Line, Ltd. v County of Los Angeles*, 441 US 434; *Board of Trustees of Univ. of Ill. v United States*, 289 US 48; *Wyndham Co. v Wyndham Hotel Co.*, 176 Misc 2d 116, 261 AD2d 242; *Centaur Communications, Ltd. v A/S/M Communications, Inc.*, 830 F2d 1217; *Alexander Ave. Kosher Rest. Corp. v Dragoon*, 306 AD2d 298; *Hotel Syracuse, Inc. v Motel Syracuse, Inc.*, 283 App Div 182, 309 NY 831; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *TCPIP Holding Co., Inc. v Haar Communications, Inc.*, 244 F3d 88; *Thane Intl., Inc. v Trek Bicycle Corp.*, 305 F3d 894; *Black & Decker Corp. v Dunsford*, 944 F Supp 220.) III. ITC Limited cannot be permitted to change the questions presented for the first time in its appellate brief. (*Maison Prunier v Prunier's Rest. & Cafe, Inc.*, 159 Misc 551; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *Park 'N Fly, Inc. v Dollar Park & Fly, Inc.*,

469 US 189; *Inwood Laboratories, Inc. v Ives Laboratories, Inc.*, 456 US 844; *Duraco Prods., Inc. v Joy Plastic Enters., Ltd.*, 40 F3d 1431; *Camelot Assoc. Corp. v Camelot Design & Dev.*, 298 AD2d 799; *Allied Maintenance Corp. v Allied Mech. Trades*, 42 NY2d 538; *Bristol-Myers Squibb Co. v McNeil-P.P.C., Inc.*, 973 F2d 1033; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088; *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663.) IV. Neither the Paris Convention for the Protection of Industrial Property nor the Agreement on Trade-Related Aspects of Intellectual Property Rights is relevant to New York law. (*Mannington Mills, Inc. v Congoleum Corp.*, 595 F2d 1287; *International Café, S.A.L. v Hard Rock Café Intl. [U.S.A.], Inc.*, 252 F3d 1274; *Mattel, Inc. v MCA Records, Inc.*, 28 F Supp 2d 1120, 296 F3d 894; *Empresa Cubana del Tabaco v Culbro Corp.*, 399 F3d 462; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088; *Almacenes Exito S.A. v El Gallo Meat Mkt., Inc.*, 381 F Supp 2d 324; *Kemart Corp. v Printing Arts Research Lab., Inc.*, 269 F2d 375; *In re Rath*, 402 F3d 1207; *United States v Pink*, 315 US 203; *United States v Belmont*, 301 US 324.)

*Fross Zelnick Lehrman & Zissu, P.C.*, New York City (*J. Allison Strickland* and *Laura Popp-Rosenberg* of counsel), for American Intellectual Property Law Association, amicus curiae. I. New York common law recognizes the well-known marks doctrine. (*A. Bourjois & Co. v Katzel*, 260 US 689; *Maison Prunier v Prunier's Rest. & Cafe, Inc.*, 159 Misc 551; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *Almacenes Exito S.A. v El Gallo Meat Mkt., Inc.*, 381 F Supp 2d 324; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088; *De Beers LV Trademark Ltd. v DeBeers Diamond Syndicate Inc.*, 440 F Supp 2d 249; *Avon Periodicals v Ziff-Davis Publ. Co.*, 27 Misc 2d 160; *Gulden v Chance*, 182 F 303; *Qualitex Co. v Jacobson Products Co.*, 514 US 159; *Moseley v V Secret Catalogue, Inc.*, 537 US 418.) II. The standards must be flexible, but the doctrine should require a foreign mark to be well known to at least one sector of the public. (*Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088; *Maison Prunier v Prunier's Rest. & Cafe, Inc.*, 159 Misc 551; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *Two Pesos, Inc. v Taco Cabana, Inc.*, 505 US 763, 1244; *Time, Inc. v Petersen Pub. Co. L.L.C.*, 173 F3d 113.)

*Dorsey & Whitney LLP*, New York City (*Bruce R. Ewing* of counsel), *Theodore H. Davis, Jr.*, and *David C. Stimson* for International Trademark Association, amicus curiae. I. New York has long maintained broad protections against unfair com-

petition that this Court should not undermine. (*Electrolux Corp. v Val-Worth, Inc.*, 6 NY2d 556; *Ronson Art Metal Works v Gibson Lighter Mfg. Co.*, 3 AD2d 227; *Taendsticksfabriks Akticbolagat Vulcan v Myers*, 139 NY 364; *Mitchel H. Mark Realty Corp. v Major Amusement Co.*, 180 App Div 549; *Metropolitan Opera Assn., Inc. v Wagner-Nichols Recorder Corp.*, 199 Misc 786, 279 App Div 632; *American Chain Co., Inc. v Carr Chain Works, Inc.*, 141 Misc 303; *Fisher v Star Co.*, 231 NY 414; *Norwich Pharmacal Co. v Sterling Drug, Inc.*, 271 F2d 569; *Gotham Silk Hosiery Co. v Reingold*, 223 App Div 260; *Long's Hat Stores Corp. v Long's Clothes*, 224 App Div 497.) II. New York courts have long recognized that the tort of unfair competition prohibits the misappropriation of goodwill and other property interests of businesses located outside of the state. (*Vaudable v Montmartre, Inc.*, 20 Misc 2d 757; *Maison Prunier v Prunier's Rest. & Cafe, Inc.*, 159 Misc 551; *Lincoln Rest. Corp. v Wolfies Rest. Inc.*, 291 F2d 302; *Ambassador E., Inc. v Shelton Corners, Inc.*, 120 F Supp 551; *Hanover Star Milling Co. v Metcalf*, 240 US 403; *United Drug Co. v Theodore Rectanus Co.*, 248 US 90; *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088.) III. This Court should not involve itself in doctrinal disputes concerning the famous marks doctrine.

### OPINION OF THE COURT

READ, J.

The United States Court of Appeals for the Second Circuit has asked us to resolve two questions regarding New York common-law claims for unfair competition. We conclude that New York recognizes common-law unfair competition claims, but not the "famous" or "well-known" marks doctrine.

### I.

ITC Limited, a corporation organized under the laws of India, owns and operates the Maurya Sheraton & Towers, a five-star luxury hotel in New Delhi, India, through its subsidiary, ITC Hotels Limited. One of the Maurya Sheraton's seven restaurants is Bukhara, a five-star restaurant named after a city in Uzbekistan located on the famous Silk Road between China and the West. The New Delhi Bukhara, which has attained some measure of renown among those with an avid interest in fine cuisine, was named one of the 50 best restaurants in the world by London-based "Restaurant" magazine in 2002 and 2003. In the three decades since the New Delhi Bukhara opened in 1977, ITC has sought to capitalize on the restaurant's prestige, with

mixed results: although ITC has opened or franchised Bukhara restaurants in Hong Kong, Bangkok, Bahrain, Montreal, Bangladesh, Singapore, Kathmandu, Ajman and the United States, as of May 2004 only the original restaurant in New Delhi and the restaurants in Singapore, Kathmandu and Ajman remained in business.

ITC established a Bukhara restaurant in Manhattan in 1986; in 1987 a Bukhara restaurant was opened in Chicago by a franchisee. On October 13, 1987 ITC obtained United States trademark registration for a Bukhara mark in connection with restaurant services; however, ITC closed its Bukhara restaurant in Manhattan on December 17, 1991, and cancelled the Chicago restaurant's franchise on August 28, 1997. ITC has not owned, operated or licensed any restaurant in the United States using the Bukhara mark since terminating the Chicago franchisee's licensing agreement in 1997.

In 1999, defendants Raja Jhanjee, Vicky Vij, Dhandu Ram and Paragnesh Desai, together with Vijay Roa, incorporated Punchgini, Inc. for the purpose of opening an Indian restaurant in midtown Manhattan, which they called Bukhara Grill. Jhanjee, Vij and Ram had all worked at the New Delhi Bukhara, and Vij had also worked at ITC's Bukhara restaurant in Manhattan. As Vij explained the origin of the new restaurant's name, in 1999 there was "no restaurant Bukhara in New York, and we just thought we [would] take the name" (*ITC Ltd. v Punchgini, Inc.*, 482 F3d 135, 144 [2d Cir 2007]). In 2001, several Punchgini shareholders and defendants Mahendra Singh and Bachan Rawat, also alumni of ITC's Bukhara, opened a second Indian restaurant in midtown Manhattan, called Bukhara Grill II (*id.*; *ITC Ltd. v Punchgini, Inc.*, 373 F Supp 2d 275, 277 [SD NY 2005]). Defendants have identified five other restaurants in the United States using Bukhara in their names, including one in Brooklyn. These restaurants are not affiliated with ITC. In addition, defendants have learned of more than 20 Bukhara restaurants unrelated to ITC outside the United States, including restaurants located in Uzbekistan, Australia, Egypt, Pakistan, the United Kingdom and "a high-end . . . chain" in South Africa, which "also sells prepackaged foods under the 'Bukhara' name" and "owns the website www.bukhara.com."

The Bukhara Grill features many of the New Delhi Bukhara's signature dishes—which showcase the cuisine of the Northwest frontier region of India—and replicates many of its particular

design elements. Indeed, one press report quoted Jhanjee as describing the Bukhara Grill as "quite like Delhi's Bukhara," commenting that "[t]he food is similar . . . and the waiters too are dressed in similar Pathani suits."

On March 22, 2000, ITC's attorney sent Jhanjee a letter accusing him of "passing off [his] new business [i.e., Bukhara Grill] as that of" ITC, "piggy[ ]back[ing] on the tremendous reputation" of ITC's Bukhara restaurants, and "partak[ing] of the fame, goodwill and custom earned by [ITC], by the mere adoption of the identical name." He demanded that Jhanjee acknowledge ITC's exclusive rights to the Bukhara mark and refrain from further use of it; disclose how long he had used the Bukhara mark and render an accounting of sales and/or profits for this time period; and remit to ITC any such profits, plus estimated damages and attorneys' fees.

Bukhara Grill's counsel responded on March 30, 2000, observing that "preliminary investigation reveals that [ITC] does not presently use the mark BUKHARA in the United States nor has it been in use for more than two years." Nevertheless, counsel suggested that discussions be pursued to avoid costly litigation. On June 22, 2000, Bukhara Grill's counsel sent a follow-up letter, apparently to memorialize an oral request for ITC to "provide . . . proof of use of the alleged mark BUKHARA . . . in the United States over the last two years"; and to state that if there was no response "by June 28, 2000, we will assume that [ITC] has abandoned any rights it may have had in the alleged mark and any alleged claim against our client."

On April 15, 2002, almost two years later, ITC's attorney wrote to the Bukhara Grill's counsel, complaining that there had been "[n]o formal response" to ITC's 2000 cease-and-desist letter and reiterating ITC's demands. On April 18, 2002, Bukhara Grill's counsel replied, disputing the assertion that prior correspondence from ITC had been ignored, and reasserting abandonment, now claimed to have been "bolstered" by the passage of additional time.

On February 26, 2003, another 11 months later, ITC filed a lawsuit against defendants in the United States District Court for the Southern District of New York. The amended complaint alleged trademark infringement under section 32 (1) (a) of the Lanham Act (codified at 15 USC § 1114 [1] [a]); unfair competition and false advertising under sections 43 (a) and 44 (h) of the Lanham Act (codified at 15 USC § 1125 [a]; § 1126 [h]); and

parallel actions under New York common law. As an affirmative defense, defendants charged ITC with abandonment of any rights in the United States to the Bukhara mark, and filed a counterclaim seeking cancellation of the mark's registration on that ground.

Following discovery, defendants moved for summary judgment. As an initial matter, the District Court Judge ruled that ITC could not pursue a trademark infringement claim because the record conclusively demonstrated its abandonment of the Bukhara mark and dress for restaurants in the United States. He then considered ITC's "assert[ions] that its unfair competition claims under section 43 (a) of the Lanham Act and the New York common law provide a basis for liability independent of trademark law"; that is, ITC claimed that "[e]ven if it abandoned the 'Bukhara' mark and dress within the United States . . . it [was] nonetheless protected from unfair competition by virtue of the 'well known' or 'famous' marks doctrine" (373 F Supp 2d at 285-286).[1]

"The very existence of th[e well-known marks] doctrine is controversial," the District Court Judge opined, "as is its scope. Neither party cites, nor has the Court found, any Supreme Court or Second Circuit authority upholding liability on this theory, and it has been applied infrequently by the federal district courts" (*id.* at 286). He noted that the Ninth Circuit had recently countenanced the doctrine, but that it did so under "circumstances . . . arguably different from those in this case" (*id.*, citing *Grupo Gigante SA De CV v Dallo & Co., Inc.*, 391 F3d 1088 [9th Cir 2004] [apparently as matter of policy, court permitted Mexican grocery chain to establish whether its "Gigante" mark was sufficiently widely known among Mexican-Americans in Southern California to be protected from use by California grocery chain]).

The Judge, however, remarked that "[t]wo early cases in New York state courts, with fact patterns strikingly similar to the

---

**1.** There is some ambiguity regarding the proper name for what has been variously called the "famous marks doctrine," the "well-known marks doctrine" and the "famous mark doctrine" (*see e.g.* 5 McCarthy on Trademarks and Unfair Competition § 29:4 [4th ed 2007] [using the above names interchangeably]). Apparently, the use of "well-known" in place of "famous" took hold after the Lanham Act was amended by passage of the Federal Trademark Anti-Dilution Act of 2006, which uses "famous" as a term of art (*see* 15 USC § 1125 [c]). At any rate, "famous" and "well-known," "mark" and "marks," have been used interchangeably to describe the putative doctrine, and no distinction is intended by our choice of words here.

events alleged here by ITC, exemplify the doctrine" (373 F Supp 2d at 286, citing *Maison Prunier v Prunier's Rest. & Cafe, Inc.*, 159 Misc 551 [Sup Ct, NY County 1936]; *Vaudable v Montmartre, Inc.*, 20 Misc 2d 757 [Sup Ct, NY County 1959]). But "[a]ssuming without deciding that these cases support the existence of an unfair competition claim, even in the absence of a viable U.S. trademark, on the basis of a foreign mark that is 'well known' or 'famous,' it remains unclear how to determine what foreign marks are sufficiently 'famous' to qualify" (373 F Supp 2d at 287). After reviewing various possible standards for a mark to qualify for the putative doctrine, the District Court Judge recognized that an "apparent consensus" existed as to what "at the very least . . . must be established in the relevant American market for a mark to qualify under the 'well known' or 'famous' mark doctrine"; and that "ITC [had] failed even to establish a triable issue" under that minimum standard (*id.* at 288). He also concluded that ITC lacked standing to press its claim under the Lanham Act for false advertising. The District Court therefore granted defendants summary judgment dismissing ITC's complaint in its entirety, and cancelled ITC's registration of the Bukhara mark, as defendants had requested in their counterclaim.

On March 28, 2007, the Second Circuit affirmed the District Court's award of summary judgment on ITC's infringement, unfair competition and false advertising claims under federal law. The court acknowledged, however, that "New York common law allows a plaintiff to sue for unfair competition where a property right or a commercial advantage has been misappropriated," and stated that "in light of ITC's abandonment of the Bukhara mark and dress for restaurants in the United States, its common law assertion of a property right or a commercial advantage in these designations based on their foreign use depends on whether New York recognizes the famous marks doctrine in the circumstances here at issue" (482 F3d at 165 [internal quotation marks and citation omitted]).

Citing *Vaudable* and *Prunier*, two "decades-old trial court decisions" that are "routinely identif[ied] . . . as foundational in the development of the famous marks doctrine" (*id.* at 166), the court observed that

> "[n]either the New York Court of Appeals nor any intermediate New York appellate court . . . has ever specifically adopted the views expressed in [these

cases] to accord common law protection to the owners of famous marks. Moreover, no New York court has clearly delineated a standard for determining when a mark becomes sufficiently famous to warrant protection" (*id.* at 165-166).

Further, "recognition of the famous marks doctrine as part of New York common law is plainly an important policy issue for a state that plays a pivotal role in international commerce" (*id.* at 166). Finally, because "certification [would] conclusively resolve the question of whether ITC's state unfair competition claim was, in fact, properly dismissed" (*id.* at 166-167), the Second Circuit certified two questions to us regarding the New York common-law claims.

## II.

### Certified Question No. 1

"Does New York common law permit the owner of a famous mark or trade dress to assert property rights therein by virtue of the owner's prior use of the mark or dress in a foreign country?" (482 F3d at 167.)

The Second Circuit's first certified question calls upon us to define property rights in the context of a common-law unfair competition claim grounded on a theory of misappropriation (*see* 482 F3d at 165). Thus, we must consider whether a famous foreign mark constitutes property or a commercial advantage protected from unfair competition under New York law.

We have long recognized two theories of common-law unfair competition: palming off and misappropriation (*see Electrolux Corp. v Val-Worth, Inc.*, 6 NY2d 556, 567-568 [1959] [discussing the acceptance of these theories of unfair competition in New York courts and collecting cases]). "Palming off"—that is, the sale of the goods of one manufacturer as those of another[2] —was the first theory of unfair competition endorsed by New York courts, and "has been extended . . . to situations where the parties are not even in competition" (*Electrolux*, 6 NY2d at 567,

---

**2.** "One of the most obvious forms" of palming off "occurs when the copier of an article overtly and explicitly misrepresents its source[, for example], where [a] defendant . . . substituted its product for plaintiff's when customers specifically asked for plaintiff's product" (*Remco Indus., Inc. v Toyomenka, Inc.*, 286 F Supp 948, 954 [SD NY 1968], *affd* 397 F2d 977 [2d Cir 1968] [citation omitted]; *see also Shaw v Time-Life Records*, 38 NY2d 201, 206 [1975] [defendant "could not 'palm off' its records as being the personal work of" plaintiff under New York unfair competition law]).

citing *Elgin Nat. Watch Co. v Illinois Watch Case Co.*, 179 US 665, 674 [1901]; *Neva-Wet Corp. v Never Wet Processing Corp.*, 277 NY 163, 168 [1938]; *Cornell Univ. v Messing Bakeries*, 285 App Div 490 [3d Dept 1955], *affd without op* 309 NY 722 [1955] [three additional citations, all either Court of Appeals opinions or Appellate Division opinions affirmed without opinion by this Court, omitted]).

After the United States Supreme Court sanctioned the misappropriation theory of unfair competition in *International News Service v Associated Press* (248 US 215 [1918]), "[t]he principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has . . . often been implemented in [New York] courts" (*Electrolux*, 6 NY2d at 567, citing *Germanow v Standard Unbreakable Watch Crystals, Inc.*, 283 NY 1, 18 [1940]; *Fisher v Star Co.*, 231 NY 414, 428 [1921]; *see also Meyers v Waverly Fabrics, Div. of Schumacher & Co.*, 65 NY2d 75, 79-80 [1985] [acknowledging defendant's possible liability for "violation of the law of unfair competition by misrepresenting the (uncopyrighted) design, which it knew to be plaintiff's, as its own" (numerous citations omitted)]; *National Basketball Assn. v Motorola, Inc.*, 105 F3d 841, 847-853 [2d Cir 1997] [accepting misappropriation as a theory under New York common law]). Indeed, the New York cases cited by the District Court and the Second Circuit as embodying the famous or well-known marks doctrine in New York common law—*Prunier* and *Vaudable*—were, in fact, decided wholly on misappropriation theories.

In *Prunier*, the plaintiff operated celebrated haute cuisine restaurants in Paris and London, but none in the United States. The defendants opened a restaurant in New York and

> "appropriated to themselves the plaintiff's name. . . . Indeed, it was admitted . . . that the name was intentionally selected because of plaintiff's well-known reputation and good will which has been built up as the result of decades of honest business effort.
>
> "The defendants den[ied], however, that they ever held themselves out as being Prunier's of Paris" (159 Misc at 553).

The court upheld the legal viability of an unfair competition claim by the plaintiff—even though the two restaurants were not in direct competition—so long as "plaintiff['s] conten[tion]

that its reputation extends far beyond the territorial limits of Paris and London and that it has a substantial following *in New York city* and in other parts of the world" was proved (*id.* at 559 [emphasis added]).

In *Vaudable*, the plaintiff's restaurant in Paris—Maxim's— was internationally famous "in the high-class restaurant field" (20 Misc 2d at 758-759). The defendants "appropriate[d] the good will plaintiffs [had] created in the name Maxim's as a restaurant," and were therefore held liable for unfair competition based on misappropriation even though the parties were "not in present actual competition" (*id.* at 759). "The trend of the law, both statutory and decisional," the court opined, "has been to extend the scope of the doctrine of unfair competition, whose basic principle is that commercial unfairness should be restrained whenever it appears that there has been a misappropriation, for the advantage of one person, of a property right belonging to another" (*id.* at 759 [citations omitted]; *see also Roy Export Co. v Columbia Broadcasting Sys.*, 672 F2d 1095, 1105 [2d Cir 1982] [with decline of general federal common law after inception of misappropriation branch of unfair competition tort in *International News Service*, "the doctrine was developed by the states, New York in particular; there it has flourished in a variety of factual settings"]).

█ While expositors of the famous marks doctrine point to *Prunier* and *Vaudable* (*see* 5 McCarthy on Trademarks and Unfair Competition § 29:4 n 2 [4th ed 2007] [citing *Prunier* and *Vaudable* as "(p)erhaps the most famous examples" of the "well known" marks doctrine]), *Prunier* and *Vaudable* themselves in no way explain or proclaim—let alone rely on—any famous or well-known marks doctrine for their holdings. Instead, *Prunier* and *Vaudable* fit logically and squarely within our time-honored misappropriation theory, which prohibits a defendant from using a plaintiff's property right or commercial advantage—in *Prunier* and *Vaudable*, the goodwill attached to a famous name—to compete unfairly against the plaintiff in New York.

Under New York law, "[a]n unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property" (*Roy Export*, 672 F2d at 1105). The term "commercial advantage" has been used interchangeably with "property" within the meaning of the misappropriation theory (*see Flexitized, Inc. v National Flexitized Corp.*, 335 F2d 774, 781-782 [2d Cir 1964]). What *Prunier* and *Vaudable* stand for,

then, is the proposition that for certain kinds of businesses (particularly cachet goods/services with highly mobile clienteles), goodwill can, and does, cross state and national boundary lines.

Accordingly, while we answer "Yes" to the first certified question, we are not thereby recognizing the famous or well-known marks doctrine, or any other new theory of liability under the New York law of unfair competition. Instead, we simply reaffirm that when a business, through renown in New York, possesses goodwill constituting property or a commercial advantage in this state, that goodwill is protected from misappropriation under New York unfair competition law. This is so whether the business is domestic or foreign.

## III.

### Certified Question No. 2

"How famous must a foreign mark or trade dress be to permit its owner to sue for unfair competition?" (482 F3d at 167.)

■ Protection from misappropriation of a famous foreign mark presupposes the existence of actual goodwill in New York (*see e.g. Roy Export*, 672 F2d at 1105 [misappropriation under New York law usually requires use in state of plaintiff's property or commercial advantage to compete against plaintiff]). If a foreign plaintiff has no goodwill in this state to appropriate, there can be no viable claim for unfair competition under a theory of misappropriation. At the very least, a plaintiff's mark, when used in New York, must call to mind its goodwill. Otherwise, a plaintiff's property right or commercial advantage based on the goodwill associated with its mark is not appropriated in this state when its unregistered mark is used here. Thus, at a minimum, consumers of the good or service provided under a certain mark by a defendant in New York must primarily associate the mark with the foreign plaintiff (*cf. Allied Maintenance Corp. v Allied Mech. Trades*, 42 NY2d 538, 545 [1977]).

Whether consumers of a defendant's goods or services primarily associate such goods or services with those provided by a foreign plaintiff is an inquiry that will, of necessity, vary with the facts of each case. Accordingly, we cannot—and do not—provide an exhaustive list of the factors relevant to such an inquiry. That said, some factors that would be relevant include evidence that the defendant intentionally associated its goods with those of the foreign plaintiff in the minds of the public, such as public statements or advertising stating or implying a

connection with the foreign plaintiff; direct evidence, such as consumer surveys, indicating that consumers of defendant's goods or services believe them to be associated with the plaintiff; and evidence of actual overlap between customers of the New York defendant and the foreign plaintiff.

If the customers of a New York defendant do not identify a mark with the foreign plaintiff, then no use is being made of the plaintiff's goodwill, and no cause of action lies under New York common law for unfair competition. As a result, to prevail against defendants on an unfair competition theory under New York law, ITC would have to show first, as an independent prerequisite, that defendants appropriated (i.e., deliberately copied), ITC's Bukhara mark or dress for their New York restaurants. If they successfully make this showing, plaintiffs would then have to establish that the relevant consumer market for New York's Bukhara restaurant primarily associates the Bukhara mark or dress with those Bukhara restaurants owned and operated by ITC.

Accordingly, the certified questions should be answered in accordance with this opinion.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.