05-0933-cv
ITC Limited v. Punchgini, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————

August Term, 2005

(Argued: November 18, 2005          Decided: February 26, 2008)

Docket No. 05-0933-cv

———————

ITC LIMITED AND ITC HOTELS LIMITED,

*Plaintiffs-Counter-Defendants-Appellants*,

—v.—

PUNCHGINI, INC., RAJA JHANJEE, PARAGNESH DESAI, VICKY VIJ, DHANDU RAM, MAHENDRA SINGH, BACHAN RAWAT, BUKHARA GRILL II, INC.,

*Defendants-Counter-Claimants-Appellees*.

———————

Before:

STRAUB and RAGGI, *Circuit Judges.*[1]

———————

Appeal from an award of summary judgment in favor of defendants on federal and

state claims of trademark infringement, unfair competition, and false advertising in

_____

[1] The Honorable James L. Oakes, who was a member of this panel, retired following oral argument. The remaining two panel members, who agree on the disposition, decide this appeal pursuant to Local Rule § 0.14(b).

connection with a mark for restaurant services that plaintiffs had not used in the United States for more than three years but that they claim nevertheless qualified for protection as a "famous mark" based on international use. This court having previously affirmed the district court judgment in favor of defendants on all plaintiffs' federal claims as well as their state law claim for trademark infringement, see ITC Ltd. v. Punchgini, Inc., 482 F.3d 135 (2d Cir. 2007), we now consider the district court's judgment in favor of defendants on plaintiffs' state claim for unfair competition in light of the response of the New York Court of Appeals to our certified questions concerning the applicability of the famous marks doctrine under state law, see ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, — N.E.2d —, 2007 N.Y. Slip Op. 09813, 2007 WL 4334177 (N.Y. Dec. 13, 2007).                                                    .

Affirmed.

---

ETHAN HORWITZ (Jill Wasserman, *on the brief*), King and Spalding, New York, New York, *for* Plaintiffs.

MICHELLE MANCINO MARSH (Michael J. Freno, *on the brief*), Kenyon & Kenyon, New York, New York, *for* Defendants.

---

REENA RAGGI, *Circuit Judge*:

Plaintiffs ITC Limited and ITC Hotels Limited (collectively "ITC") sued defendants, Punchgini Inc., Bukhara Grill II, Inc., and certain named individuals associated with these businesses, in the United States District Court for the Southern District of New York (Gerard

2

E. Lynch, <u>Judge</u>), alleging various federal and state law claims of trademark infringement and unfair competition in connection with a restaurant trademark, "Bukhara," as well as related trade dress that plaintiffs had not used in the United States for more than three years. On this appeal, plaintiffs challenge an award of summary judgment in favor of defendants. See ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d 275 (S.D.N.Y. 2005). We assume a reader's familiarity with the underlying facts and procedural history in this case, which are detailed in our earlier decision, ITC Ltd. v. Punchgini, Inc., 482 F.3d 135 (2d Cir. 2007).

In that decision, this court affirmed the grant of summary judgment on ITC's trademark infringement claims under section 32(1)(a) of the Lanham Act and New York common law, concluding that ITC had abandoned its Bukhara mark for restaurant services in the United States. See <u>ITC Ltd. v. Punchgini, Inc.</u>, 482 F.3d at 142. We further affirmed summary judgment on ITC's federal unfair competition claim because it depended on the "famous marks" doctrine, which Congress has not yet incorporated into federal trademark law. See <u>id.</u> at 172. At the same time, however, we recognized the possibility that the famous marks doctrine might support a New York common law claim for unfair competition. Accordingly, we certified two questions to the New York Court of Appeals: (1) "Does New York common law permit the owner of a federal mark or trade dress to assert property rights therein by virtue of the owner's prior use of the mark or dress in a foreign country?"; and (2) "If so, how famous must a foreign mark be to permit a foreign mark owner to bring a claim for unfair competition?" Id. Having received the Court of Appeals' response, ITC Ltd. v.

3

Punchgini, Inc., 9 N.Y.3d 467,— N.E.2d —, 2007 N.Y. Slip Op. 09813, 2007 WL 4334177 (N.Y. Dec. 13, 2007), we now affirm the district court's award of summary judgment in its entirety.

I.    The New York Court of Appeals' Answers to the Certified Questions

To explain our decision, we first summarize the Court of Appeals' answers to our certified questions. The Court of Appeals responded to our first question in the affirmative, see ITC Ltd. v. Punchgini, Inc., 2007 N.Y. Slip Op. 09813 at *13-14, but, in doing so, specifically stated that it did not recognize the famous marks doctrine as an independent theory of liability under state law. Rather, the court explained that its affirmative response was intended only to reaffirm established state law prohibiting unfair competition, specifically, the principle that "when a business, through renown in New York, possesses goodwill constituting property or commercial advantage in this state, that goodwill is protected from misappropriation under New York unfair competition law. This is so whether the business is domestic or foreign." Id. at *13-14.

In response to our second question, the Court of Appeals wrote as follows:

Protection from misappropriation of a famous foreign mark presupposes the existence of actual goodwill in New York. If a foreign plaintiff has no goodwill in this state to appropriate, there can be no viable claim for unfair competition under a theory of misappropriation. At the very least, a plaintiff's mark, when used in New York, must call to mind its goodwill. . . . Thus, at a minimum, consumers of the good or service provided under a certain mark by a defendant in New York must primarily associate the mark with the foreign plaintiff.

Id. at *14 (citations omitted). Although the court cautioned that the relevant inquiry would

4

necessarily vary with the facts of each case, it identified the following factors as potentially relevant: (1) evidence that "the defendant intentionally associated goods with those of the foreign plaintiff in the minds of the public, such as public statements or advertising stating or implying a connection with the foreign plaintiff"; (2) "direct evidence, such as consumer surveys, indicating that consumers of defendant's goods or services believe them to be associated with the plaintiff"; and (3) "evidence of actual overlap between customers of the New York defendant and the foreign plaintiff." Id. at *15.

The Court of Appeals concluded its response to our certified inquiry by observing that,

> to prevail against defendants on an unfair competition theory, under New York law, ITC would have to show first, as an independent prerequisite, that defendants appropriated (i.e., deliberately copied), ITC's Bukhara mark or dress for their New York restaurants. If they make that showing, [ITC] would then have to establish that the relevant consumer market for New York's Bukhara restaurant primarily associates the Bukhara mark or dress with those Bukhara restaurants owned and operated by ITC.

Id. at *15-16. In short, to pursue an unfair competition claim, ITC must adduce proof of both deliberate copying and "secondary meaning." See ITC Ltd. v. Punchgini, Inc., 482 F.3d at 167 (observing that "'[s]econdary meaning' is a term of art referencing a trademark's ability to 'identify the source of the product rather than the product itself'" (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 766 n.4 (1992)).

5

II.     ITC's Failure to Raise a Genuine Issue of Material Fact as to Secondary Meaning

Reviewing the challenged summary judgment award on ITC's state law claim of unfair competition in light of this response, we easily conclude, as the district court did, see ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d at 290, that ITC adduced sufficient evidence of deliberate copying to satisfy that element of this claim. Thus, we focus in this opinion on the sufficiency of defendants' showing of secondary meaning.

The district court concluded that ITC "failed even to establish a triable issue as to the existence of 'secondary meaning' in the New York market in which defendants operate." Id. at 288. In challenging this conclusion, ITC has abandoned its original appellate argument that no proof of secondary meaning is required when a New York unfair competition claim is based on intentional copying. Recognizing that the New York Court of Appeals' opinion ruled otherwise, ITC now contends that the district court erred in concluding that it could not establish secondary meaning. Specifically, ITC faults the district court for applying a different and stricter standard to its secondary meaning analysis than the New York Court of Appeals has now identified. ITC submits that, if it had had the benefit of the Court of Appeals decision, it would have submitted additional and certainly sufficient evidence to withstand summary judgment. The argument, which is conclusory rather than specific, is unconvincing both on the facts and the law.

First, assuming arguendo that the district court did apply a stricter standard of secondary meaning than required by New York law, that hardly explains ITC's decision to

6

withhold evidence supportive of secondary meaning, particularly because any evidence of secondary meaning would also have been material to plaintiffs' theory of famous marks protection under federal and state law. Second, and perhaps more important, the record demonstrates that the district court did not, in fact, hold ITC to an unduly strict standard of secondary meaning. To the contrary, it considered whether there was sufficient evidence to demonstrate secondary meaning however that term was construed. Toward this end, the district court reviewed the record evidence in light of the six factors classically recognized as relevant to secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." Id. (quoting Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997)). We discern no material difference between the standard established by these factors and those enumerated by the New York Court of Appeals and quoted earlier in this opinion.

ITC argues that the district court nevertheless erred in requiring secondary meaning in "the New York market," id., whereas the New York Court of Appeals focused more narrowly on defendants' customers in New York, see ITC Ltd. v. Punchgini, Inc., 2007 N.Y. Slip Op. 09813 at *14. In fact, it is evident from a review of both decisions that the two courts were referring to the same market, i.e., potential customers for defendants' New York restaurant. We do not understand the Court of Appeals to have limited the relevant market to persons who had already eaten in defendants' restaurants, nor do we understand the district

7

court to have expanded the relevant market to every New Yorker, whether or not inclined to eat in restaurants generally or Indian restaurants in particular. See, e.g., ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d at 286 (describing relevant market examined in Vaudable v. Monmartre, Inc., 20 Misc. 2d 757, 193 N.Y.S.2d 332, 334-35 (N.Y. Sup. Ct. 1959), as "the class of people residing in the cosmopolitan city of New York who dine out"); id. at 287-88 (describing test in Grupo Gigante S.A. de C.V. v. Dallo & Co., 391 F.3d 1088, 1097-98 (9th Cir. 2004), as "whether customers of the American firm are likely to think they are patronizing the same firm that uses the mark in another country").

In any event, even if we were to conclude that the district court somehow erred in its market definition, ITC has failed to adduce evidence sufficient to create a genuine issue of material fact on the question of whether the Bukhara mark, when used in New York, calls to mind for defendants' potential customers ITC's goodwill, or that defendants' customers primarily associate the Bukhara mark with ITC. See ITC Ltd. v. Punchgini, Inc., 2007 N.Y. Slip Op. 09813 at *14. Like the district court, we observe that ITC's proffered evidence of goodwill derived entirely from foreign media reports and sources and was unaccompanied by any evidence that would permit an inference that such reports or sources reach the relevant consumer market in New York. See ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d at 290. ITC proffered no evidence that it had "directly targeted advertising of its Indian or other foreign 'Bukhara' restaurants to the United States." Id. at 288-89. It made no attempt to prove its goodwill in the relevant market through consumer study evidence linking the

8

Bukhara mark to itself, and it presented no research reports demonstrating strong brand name recognition for the Bukhara mark anywhere in the United States. See id. at 289 & n.15. Moreover, the record is devoid of any evidence of actual overlap between customers of defendants' restaurant and ITC's Bukhara, aside from ITC's own inadmissible speculation. Absent admissible evidence, however, a reasonable factfinder could not conclude that potential customers of defendants' restaurant would primarily associate the Bukhara mark with ITC, particularly in light of evidence that numerous Indian restaurants in Massachusetts, Washington, Virginia, and around the world have used the name "Bukhara," all without any affiliation or association with ITC.

ITC's belated efforts to identify admissible evidence of secondary meaning are unavailing. First, ITC points to record evidence that a significant number of defendants' customers are Indian or "well-traveled [people who] know what authentic Indian food tastes like." Appellants' Supp. Br. Jan. 7, 2008, at 7. Even if these facts support a reasonable inference that this consumer market is "more knowledgeable about India than the general New York population," id., ITC provides no evidence – apart from its own conjecture – to support the conclusion that, as a consequence, these persons "primarily associate" the name "Bukhara" with ITC. Conjecture, of course, is insufficient to withstand summary judgment. See, e.g., Bridgeway Corp. v. Citibank, 201 F.3d 134, 142 (2d Cir. 2000). Second, ITC argues that the district court failed to consider evidence of "public statements or advertising stating or implying a connection with the foreign plaintiff." Appellants' Supp. Br. Jan. 7,

9

2008, at *7. We are not persuaded. The district court plainly considered this evidence and concluded that it supported ITC's claim of intentional copying. Moreover, the district court recognized that "there may be some circumstances in which intentional copying is sufficient to show 'secondary meaning.'" ITC Ltd. v. Punchgini, Inc., 373 F. Supp. 2d at 291. But it cogently explained why this was not such a case: "it would be tautological to conclude that copying alone demonstrates 'secondary meaning' sufficient to permit an unfair competition claim as to a foreign mark here, where that copying is only prohibited by the 'well known' or 'famous' mark exception if the mark has 'secondary meaning.'" Id. We adopt this reasoning as consistent with the New York Court of Appeals' conclusion that more than copying is necessary for a famous foreign mark holder to pursue a state law claim for unfair competition. That foreign holder must further offer evidence that the defendant's potential customers "primarily associate[]" the mark with the foreign holder. ITC Ltd. v. Punchgini, Inc., 2007 N.Y. Slip Op. 09813 at *14. ITC cannot satisfy this burden simply by pointing to evidence of obvious similarities between defendants' Bukhara Grill and ITC's own Bukhara restaurant, because such evidence is no proof that defendants' potential customers were even aware of the existence of ITC's Bukhara.

Finally, ITC faults the district court for ignoring evidence of the goodwill created by ITC's New York and Chicago restaurants during the years they operated. Even if we were to assume the possibility of a company maintaining goodwill for years after abandoning a trademark, ITC cannot point to any record support — even from a single one of defendants'

10

customers — that the goodwill of ITC's New York and Chicago restaurants lingered so that defendants' potential customers "primarily associated" New York's Bukhara Grill with ITC establishments. Id.

III.    Conclusion

For the reasons stated, we conclude that the record evidence is insufficient as a matter of law to raise a triable question of fact on the issue of secondary meaning necessary to establish a New York State claim for unfair competition in a foreign mark. Accordingly, we hold that the district court correctly granted summary judgment in favor of defendants on this claim, and we now conclude our consideration of this appeal by affirming the judgment of the district court in all respects.

AFFIRMED.

11