■ BITSIGHT TECHNOLOGIES, INC., et al., Appellants, v SECURITYSCORECARD, INC., Respondent. [40 NYS3d 375]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered on or about January 25, 2016, which, insofar as appealed from as limited by the briefs, granted defendant's motion pursuant to CPLR 3211 to dismiss the claims for misappropriation of confidential information/unfair competition, false advertising/unfair competition, a permanent injunction, and breach of section 10.2 of the contract between defendant and plaintiff NSEC-Sistemas Informaticos, S.A., doing business as Anubis Networks (Anubis), unanimously modified, on the law, to deny the motion as to misappropriation of confidential information/unfair competition, a permanent injunction, and breach of section 10.2, and otherwise affirmed, without costs.

We find that section 10.1 of the contract between defendant and Anubis (the definition of "Confidential Information") is ambiguous (*see e.g. Telerep, LLC v U.S. Intl. Media, LLC*, 74 AD3d 401, 402 [1st Dept 2010]). Therefore, the claim of breach of section 10.2 of the contract should not have been dismissed.

By its strict terms, section 10.1 does not apply to cyberfeeds. Cyberfeeds are not "information relating to . . . product information . . . of" Anubis; rather, they are Anubis's product itself. However, if "Confidential Information" did not include cyberfeeds, then a description of cyberfeeds (i.e., information relating to Anubis's product information) would be given more protection than cyberfeeds themselves, which is absurd (*see Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170 [1st Dept 2003]). On the other hand, there is evidence within the contract that supports defendant's interpretation that "Confidential Information" does not include cyberfeeds. Annex 1, which is part of the contract, contains a section called "Authorization to Resell Cyberfeed," which includes check-off boxes for "yes" and "no." In the contract between defendant and Anubis, the "no" box is checked. However, if the "yes" box were checked, "Confidential Information" could not include cyberfeeds, since the customer could not comply with section 10 (the confidentiality provisions) while reselling cyberfeeds.

The first cause of action (misappropriation of confidential information/unfair competition) should not have been dismissed. When a party sells information to subscribers with the requirement that the latter keep the information confidential, the information is still protected (*see International News*

*Service v Associated Press*, 248 US 215, 237 [1918]; *Dodge Corp. v Comstock*, 140 Misc 105, 109 [Sup Ct, Erie County 1931]). At least for the purposes of a CPLR 3211 motion to dismiss, Anubis "took sufficient precautionary measures" to keep cyberfeeds confidential (*Edelman v Starwood Capital Group, LLC*, 70 AD3d 246, 249 [1st Dept 2009], *lv denied* 14 NY3d 706 [2010]), since a trier of fact might find that cyberfeeds are covered by the contract's confidentiality provisions. As for the unfair competition part of the first cause of action, the complaint's allegations fall under the "misappropriation theory of unfair competition" (*ITC Ltd. v Punchgini, Inc.*, 9 NY3d 467, 477 [2007]; *see also Macy's Inc. v Martha Stewart Living Omnimedia, Inc.*, 127 AD3d 48, 56-57 [1st Dept 2015]).

The third cause of action (false advertising/unfair competition) was correctly dismissed. It fails to allege, as required under General Business Law § 350, that defendant engaged in "consumer-oriented conduct" (*see Koch v Acker, Merrall & Condit Co.*, 18 NY3d 940, 941 [2012] [internal quotation marks omitted]). "In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for personal, family or household purposes" (*Cruz v NYNEX Info. Resources*, 263 AD2d 285, 289 [1st Dept 2000] [some internal quotation marks omitted]). It does not encompass "businesses which purchase a widely sold service that can only be used by businesses" (*id.* at 286). All the parties provide services to *businesses*, not individuals.

At this early stage, the fifth cause of action (injunctive relief) should be permitted to survive. The complaint alleges that defendant has diverted sales away from plaintiff BitSight Technologies, Inc. BitSight's "loss of current or future market share may constitute irreparable harm" (*Grand Riv. Enter. Six Nations, Ltd. v Pryor*, 481 F3d 60, 67 [2d Cir 2007]). Moreover, defendant acknowledged in its contract with Anubis that "any breach of its obligations with respect to Confidential Information . . . would cause substantial harm to the other party that could not be remedied by payment of damages alone" (*see Ticor Tit. Ins. Co. v Cohen*, 173 F3d. 63, 69 [2d Cir 1999]). Concur—Acosta, J.P., Renwick, Saxe, Feinman and Kahn, JJ.